PRICE PARKINSON & KERR, PLLC
Jason Kerr
Utah Bar No. 8222
5742 W. Harold Gatty Dr., Suite 101
Salt Lake City, UT 84116
801.530.2900
jasonkerr@ppktrial.com

*Local Counsel for Plaintiff*

BONA LAW PC
Aaron Gott
Luke Hasskamp
BONA LAW PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589
aaron.gott@bonalawpc.com
luke.hasskamp@bonalawpc.com

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| ARIIX, LLC, | Case No.: |
| *Plaintiff,* | |
| vs. | **Complaint** |
| USANA HEALTH SCIENCES, INC., | Jury Trial Demanded |
| *Defendant.* | |

Plaintiff Ariix, LLC alleges as follows upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

I.     The *NutriSearch Comparative Guide to Nutritional Supplements* purports to provide objective ratings and certifications of supplement products. The Guide is marketed to consumers and professionals as "scientifically objective," touting unbiased ratings based on 18 criteria developed by 12 independent nutritional authorities, and certifications based on independent laboratory review. It denies any affiliation with any of the companies that are rated or certified in the publication. Consumers and professionals rely on these representations to determine which supplements they should purchase or sell.

II.     But those representations are all false: the Guide is a sham marketing scheme controlled by and intended for the sole benefit of Defendant Usana Health Sciences, Inc., a supplement company that uses the Guide to flood the market with self-serving marketing messages while masking them under the guise of scientific objectivity and independence. Indeed, the Guide was first concocted by Lyle MacWilliam, a Usana sales representative, to personally boost sales of Usana products in his personal "downline." Usana quickly recognized the value and untapped potential of the Guide and worked to bring the Guide to a mass market. Usana promotes the Guide as a key sales tool to its sales representatives and encourages them to use it to peddle Usana products to consumers. Usana pays MacWilliam and his company, NutriSearch Corporation, hundreds of thousands of dollars per year out of its marketing budget, all to push Usana's commercial messages

to consumers while concealing Usana's control of their actions and editorial control of the Guide's content.

III.     Usana conspired with NutriSearch and MacWilliam to manipulate the Guide's ratings criteria to ensure that Usana remains the Guide's top-rated supplement company and to actively sandbag Usana's competitors' ratings and certifications. Usana has specifically conditioned paying compensation on receiving the number one rating, and it has threatened to pull its support when ratings did not sufficiently elevate Usana's pedestal. It even once agreed to bankroll MacWilliam's summer-long vacation/speaking tour to promote Usana in exchange for a new award category exclusively for Usana: "Editor's Choice."

IV.     But long before the announcement of this latest sham award category, the editor had made his choice to give Usana ultimate control over the core purpose of the Guide—to review and rank supplement products. Thus, Usana (along with NutriSearch and MacWilliam) profited at the expense of consumers who sought objective information about nutritional supplements. Instead, those consumers became the unwitting victims of a sophisticated marketing ploy to influence their purchasing decisions by feeding them objectively false information disguised as independent and credible.

V.     Ariix, a direct competitor of Usana, was one of the main victims of this scheme: it lost sales representatives and consumers as a result of Usana's conduct. Ariix is a newer company in the market, and its mission is to outcompete Usana on quality and value. But, with Usana pulling the strings, the Guide deliberately

deflated Ariix's ratings and denied it certifications for which it had objectively—and admittedly—qualified, while inflating Usana's ratings and certifications. Many sales representatives and end consumers have been deceived into choosing Usana over Ariix, thus directly damaging Ariix.

VI.      As the Ninth Circuit held in a related action, this "sham marketing ploy intended to boost Usana products" is actionable commercial speech. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021). Usana has a vested interest in this scheme to facilitate the sale of Usana's products. These facts state a claim for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Ariix seeks damages and declaratory and injunctive relief to finally put this egregious, widespread, and long-running fraud on the market to an end.

## JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the laws of the United States and 15 U.S.C. § 1121 because the complaint alleges a Lanham Act violation.

2.      This Court has general personal jurisdiction over Usana because Usana resides in Utah. This Court also has specific personal jurisdiction over Usana because Usana committed intentional acts in Utah that it aimed at Ariix, which also resides in Utah, with the purpose of causing harm to Ariix in Utah.[1]

---

1.      Ariix previously filed its claims against Usana, along with its co-conspirators NutriSearch and MacWilliam, in the Southern District of California. Case No. 17CV320-LAB (S.D. Cal.) But the Southern District of California granted Usana's motion to dismiss for lack of personal jurisdiction. *See Ariix, LLC v. NutriSearch*

3.      Venue is proper in the District of Utah under 28 U.S.C. § 1391(b)(1) because Usana is a resident of Utah. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

4.      Plaintiff Ariix, LLC is an international health and wellness company and a wholly owned subsidiary of NewAge, Inc. that markets exclusively branded products through independent representatives, with its principal place of business in Bountiful, Utah. Ariix collaborates with world-renowned experts to promote healthy living through toxic-free products that, after only seven short years since Ariix's founding, are available through a carefully curated network of sales representatives in more than a dozen nations, including the United States. It was founded by former Usana executives who were discontent with its various scandals and dishonest practices.

5.      Defendant Usana Health Sciences, Inc. is a Utah corporation residing in Salt Lake City, Utah. Usana is a commercial competitor of Ariix, and it exercises control over the *NutriSearch Comparative Guide to Nutritional Supplements* as well as NutriSearch and MacWilliam.

---

*Corp.*, No. 17CV320-LAB (BGS), 2022 U.S. Dist. LEXIS 50386, at *2 (S.D. Cal. Mar. 21, 2022). Although Ariix disagreed with the personal jurisdiction ruling, it elected to proceed against Usana in this District where Usana resides. The action in the Southern District of California remains pending against the remaining defendants NutriSearch and MacWilliam.

6.      Usana and its employees and agents participated personally in the unlawful conduct challenged in this complaint and, when they did not personally participate, they authorized, acquiesced, set in motion, or otherwise failed to take necessary steps to prevent the acts complained of in this complaint.

## SUBSTANTIVE ALLEGATIONS
### The NutriSearch Guide

7.      The *NutriSearch Comparative Guide to Nutritional Supplements* is the comparative supplement ratings and review guide that many turn to, particularly sales representatives, in the supplement direct marketing industry. Due to the factors explained below, the Guide has become the trusted name among these independent sales representatives. Indeed, these representatives decide which companies to work with and which products to sell based on the ratings contained within the guide.

8.      NutriSearch bills itself as an independent company that presents only objective data and analyses to the purchasing public. It publicly prides itself on separating the good from the bad in an industry viewed as existing in a regulatory wild west. NutriSearch seizes upon supplement scandals as a marketing tool.

9.      Two versions of the Guide are published: a consumer edition and a professional edition. The professional edition is mainly used by sales representatives. The Guide generally has two parts: an "informational" part that purports to describe the benefits and science of supplementation, and a "ratings" part that purports to comparatively rate most supplement products on the market.

10.     The current professional edition is the 6th Professional Edition. A new edition is not published each year, but updates are provided every year a new edition is not released.

11.     Each edition of the Guide contains the following statement on the inside cover:

> This guide is intended to assist in sorting through the maze of nutritional supplements available in the marketplace today. It is not a product endorsement and does not make any health claim. It simply documents recent findings in the scientific literature.
>
> This guide was not commissioned by any public sector or private sector interest, or by any company whose products may be represented herein. The research, development, and findings are the sole creative effort of the author and NutriSearch Corporation, neither of whom is associated with any manufacturer or product represented in this guide.[2]

12.     The Guide purports to comparatively rate supplement products on the market using a five-star rating system determined by a "comprehensive analytical model" based on 18 different "health support criteria" derived from 12 independent scientific sources and additional scientific findings as they become known.

13.     Usana's former sales representative, MacWilliam, has appeared as a guest on the Dr. Oz Show, a "natural health"-centric daytime talk show, to promote the Guide. He advertised the Guide as an "evidence-based scientifically based [sic] system to separate the wheat from the chaff" that is specifically designed to eliminate any bias or subjectivity:

---

2.     The 6th edition of the guide, which was published after litigation began in the Southern District of California, appears to have removed the second paragraph. NutriSearch's removal of the claims of independence and neutrality from the 6th edition, in response to the litigation, is a tacit admission that the claims were false.

Well what we've done in the book is we've taken a scientific discipline to evaluate the product. First of all, we developed an analysis model based upon the published recommendations of 12 other nutritional authorities. *We didn't want to put our particular bias into it* so we relied on— we stood on the shoulders of others so to speak—and developed this criteria and then we applied it to 18 different health support—what we call 18 different health support criteria such as heart health, metabolic health, level of inflammation, and on and on and on, so it's 18 different ways of kind of kicking the tires, looking under the hood.

(Emphasis added.)

14.     NutriSearch claims in the Guide and on its website that this is an entirely mathematical potency determination:

To evaluate a product, its rating for each Health Support criterion is calculated mathematically. This rating is determined by the nutrients and their potencies present in the product in relation to the requirements for each criterion. The 16 individual ratings for each product are pooled to provide a raw score for that product. These scores represent a product's rating relative to all products evaluated within a particular market. Final product ratings are displayed as star ratings, shown in one-half-star increments from zero to five stars.

15.     Companies whose products receive top ratings are invited to obtain another certification from NutriSearch called the NutriSearch Medals of Achievement (formerly called the Gold Medal of Achievement), which is the "central feature" of the Guide. Certification is obtained by verifying compliance with the FDA's pharmaceutical good manufacturing practices (GMP) and by obtaining a certification that its label claims are true from one of two NutriSearch-approved laboratories (NSF International or U.S. Pharmacopeial Convention).

16.     As MacWilliam explained on the Dr. Oz Show:

We invited every company that we evaluated that scored five out of five stars, and we said "hey, put your money where your mouth is. Take your product, run it through an independent assessment body like the U.S. pharmacopoeia program or the NSF vitamin supplement program,

8

demonstrate to us that you are manufacturing to basically pharmaceutical standards, and then what we want you to do is take your product off the shelf and have an independent lab assess that product so what it says on the label we know is actually in the bottle.

17.     These statements all suggest, individually and collectively, that NutriSearch is an independent observer that provides objective, scientific, evidence-based ratings and certifications of supplement products. Indeed, the guide's value comes from the perception that it is independent, objective, and scientifically based.

18.     But the statements are misleading and, in some cases, false: NutriSearch and MacWilliam are closely affiliated and collaborate with, and are directly funded and controlled by, Usana, one of the world's largest direct sales supplement companies. In direct exchange for that consideration, NutriSearch consistently rates Usana as the best supplement company throughout the world, ensures symbiosis between the guide's informational content and rating system and Usana's current products and marketing claims, and deflates the ratings of Usana's close competitors. When the Ninth Circuit previously assessed these allegations, it found them "troubling" and concluded "they plausibly suggest that the Guide is more like a sophisticated marketing sham rather than a product review guide." *Ariix*, 985 F.3d at 1118.

**Usana controls the Guide's content and the actions of its co-conspirators**

19.     Usana has long had a cozy relationship NutriSearch and MacWilliam. MacWilliam is a former Usana sales representative, a former member of Usana's scientific advisory board, and has had regular speaking engagements at Usana's global and regional sales representative meetings. Indeed, MacWilliam originally

designed the Guide as a tool to help sell Usana products himself. The current CEO of NutriSearch, Gregg Gies, is also a former Usana representative.

20.     In fact, MacWilliam remained a Usana sales representative and advisory board member for several years after initiating the Guide until another supplement company, Melaleuca, exposed MacWilliam's affiliation and apparent bias. In response, MacWilliam told (now former) Usana executives: "I should not be on the board or a representative anymore because it looks like I'm biased. I am going to create more of a third-party appearance, but I'd like you to use me for speaking and support me." Usana said, "Yes, if you give us the number-one rating." MacWilliam assured Usana it would get the number-one rating.

21.     This agreement firmly established that, though cloaked in secrecy and designed to appear independent, Usana exercised control over editorial decisions, and Usana's payments to NutriSearch and MacWilliam were tied to and depended on elevating Usana above its competitors in the Guide (and keeping it that way).

22.     Usana's management categorizes payments to NutriSearch and MacWilliam as a marketing expense, treating it precisely in the manner it would treat payments to a publicist or marketing agency rather than the way it treated independent objective event speakers. Usana executives explicitly justified these expenses by characterizing the Guide as a marketing and promotion tool used every day to recruit new distributors and sell Usana products.

23.     NutriSearch and MacWilliam entirely depend on Usana's "support." Usana has directly paid NutriSearch and MacWilliam hundreds of thousands of dollars per year in fixed stipends, speaking fees, promotion fees, and travel costs.

24.     Usana also provides other consideration: it heavily promotes the Guide to its sales representatives and encourages them to purchase it. At Usana's conventions and other conferences, MacWilliam is the only purportedly "independent" speaker allowed to promote and sell his own products—and that is because his product—the Guide—is not an independent third-party publication. Rather, it is a publication controlled and paid for by Usana to promote and sell its products.

25.     Usana's marketing tools program for its sales representatives also focuses on the Guide as its central component: they are told to get the Guide, learn it, refer to it in making sales, and even pitch the Guide to end consumers. The publication of a new edition of the Guide has almost always been tied to the date of Usana's annual convention attended by thousands of Usana distributors, which ensured Usana could continue to direct associates to the latest edition and further assured robust sales.

26.     Usana also facilitates publication of the Guide through a third-party publisher with whom Usana has a longstanding relationship: ProTools. In fact, Usana introduced NutriSearch and MacWilliam to ProTools to arrange for the publication. Initial iterations of the Guide were simple and informal documents that MacWilliam assembled himself to help drive sales for his personal Usana downline. It was only

after Usana realized the potential of the Guide that it worked to enhance it by vastly expanding its scope and audience. Usana also receives a cut of the Guide's sales through the arrangement with ProTools that Usana brokered.

27.     Usana takes active steps to ensure that its products are the top-rated products in the Guide. When MacWilliam and NutriSearch failed to meet Usana's expectations, Usana punished them for failing to deliver by cutting them off financially. For example, in 2008, several additional companies managed to obtain Gold Medal certification under NutriSearch's criteria. Usana used its leverage and withdrew its support, causing NutriSearch's sales and MacWilliam's speaking engagements to plummet. A Usana executive explained the problem to MacWilliam when he complained about sluggish book sales and a lack of speaking engagements: "when Usana is not listed as number one, we don't want to stand up and say, 'we're one of the five best.' We like the fact that we're number one." MacWilliam asked "would it help if Usana is number one in some way?" The Usana executive said, "of course it would help."

28.     The Guide began to include a new award called "Editor's Choice," and it was, of course, awarded to Usana because of the explicit understanding that the new award—which allowed Usana to again be "the best"—would entitle MacWilliam to return to the Usana speaking circuit and sell more Guides, and thus earn more speaking fees and book royalties.

29.     After Usana was declared as Editor's Choice, MacWilliam approached Usana for his reward, stating (as one former Usana executive recalls):

12

My income is down. I would like to do a tour for Usana. I got a motorhome, and my wife wants to travel the country, and I would like you to pay for me to travel the country so I can promote my books. I'll speak on the comparative guidebook and the benefits of Usana. Usana is number one Editor's Choice, and I'll travel from city to city so my wife and I can go on a summer-long vacation and basically I want you to pay for it.

30.     Usana paid MacWilliam $90,000 for that summer tour.

31.     The next year brought a new dilemma: another company was actually going to *beat* Usana—with a perfect score, according to the disclosed criteria. NutriSearch and MacWilliam knew what that would mean: they would lose income from Usana if it was not the top-rated product. MacWilliam tried to explain the situation: "Usana will not be number one." But a Usana executive reminded MacWilliam that "we pay you to make us number one." MacWilliam responded: "We need to change something in your formula or I need to change something in my matrix." Usana agreed and worked with MacWilliam to "adjust" the matrix so that Usana stayed on top.

### Usana mandates that the Guide's rating criteria
### be changed to match its products and marketing objectives

32.     Usana and its co-conspirators have since taken extraordinary steps to ensure that Usana maintains its preeminent status and top-rated position in the Guide. They have arbitrarily revised their so-called objective scientific criteria by tweaking the advisable amounts of particular ingredients of a supplement formula to weight the criteria in Usana's favor. Every year thereafter, Usana has required MacWilliam to meet with Usana's chief product officer to obtain any upcoming changes in Usana's formulation or marketing claims. And each year, Usana has

required MacWilliam to adjust his matrix in consultation with Usana so that Usana's new formulation would come out on top, complete with new scientific literature discussing topics that coincided with Usana's new marketing claims. And every year, he has done so.

33.     At Usana's behest, the 6th edition of the Guide again manipulated the Gold Medal of Achievement criteria—now called the Medals of Achievement with multiple echelons (bronze, silver, gold, diamond, and platinum). These adjustments enabled Usana to state it is the best of the best because, of course, it earned the only Platinum Medal of Achievement.

34.     The collusion extends to Usana's current marketing claims. For example, Usana began making "cell-signaling" claims on its labels. Not surprisingly, the 6th edition of the Guide, published on the heels of the claims, has a corresponding focus: "the guide has been completely rewritten in light of recent groundbreaking discoveries from the world of nutritional research" on cell-signaling. In fact, "cell-signaling" is not a new concept—it is a well-known phenomenon that has been known, studied, and written about for many years. The only thing that's new about it is Usana's label claims, and a Guide that is custom-tailored to highlight those claims.

35.     Similarly, Usana had increased the vitamin D and iodine content in its products and revised its marketing claims to highlight those two ingredients. The 5th edition of the Guide, which coincided with the products' re-launch, was "rewritten from cover to cover" to discuss "the most recent and exciting scientific findings on two super-nutrients: Vitamin D and Iodine," according to its back cover.

14

36.     That is how it works: Usana makes minor tweaks to its formula, makes major changes to its marketing to emphasize those tweaks, and then directs NutriSearch and MacWilliam to simultaneously publish a new edition of the Guide that feature language and concepts that mirror Usana's new marketing. Usana then pushes the Guide to its sales representatives, which gives them ammunition to sell Usana products—and distinguish them from competitors—to consumers. Consumers who read the guide—touted as an independent, scientifically objective, evidence-based guide on nutrition supplementation and analysis of supplement products—are unaware they are reading a long sponsored message designed to influence them to purchase a slightly reformulated product with a new and exciting marketing claim.

37.     In assessing these same allegations, the Ninth Circuit concluded that Ariix had "alleged enough to make it plausible that NutriSearch and MacWilliam published the Guide mainly to reap the financial benefits of a hidden marketing arrangement with Usana rather than to inform consumers about nutritional supplements." *Ariix*, 985 F.3d at 1117.

38.     Thus, both the "informational" and "ratings" parts of the Guide are designed to promote Usana and its products, not to provide independent, objective information to consumers.

### Ariix

39.     The Guide is not only a tool for Usana's promotion, but also for the sabotage of its competitors. When Usana was threatened by Ariix—an emerging competitor with a similar direct sales model—Usana found willing and capable

collaborators in MacWilliam and NutriSearch, who obliged Usana by knocking Ariix out of the running with falsified poor ratings and denied certifications.

40.     Ariix is a health and wellness company that uses a direct sales model to distribute its products which include, among other things, nutritional supplements. It was launched by former Usana executives who were discontent with Usana's various scandals and dishonest practices.

41.     Ariix holds trademarks for its brand name: Ariix, Registration No. 4242877 (registered Nov. 13, 2012, valid until Nov. 13, 2022); ARIIX, Registration No. 4250956 (registered Nov. 27, 2012, valid until Nov. 27, 2022).

42.     Ariix is Usana's fiercest competitor. Both are direct sales companies headquartered in Utah. They compete with one another in sales to end consumers and in recruiting independent sales representatives to drive those sales.

43.     With Usana at the helm, the Guide deflated Ariix's ratings and denied it certification for the Medals of Achievement.

44.     Before Ariix had launched its first product or made information about it publicly available, Ariix learned that Usana had misappropriated Ariix's confidential information about its first product, Ariix Optimal, and its draft marketing materials.

45.     On information and belief, Usana provided NutriSearch with the confidential, pre-release Ariix Optimal product information. Usana then instructed NutriSearch to run a new printing for the express purpose of thwarting Ariix's entry to the market by giving Ariix Optimal a sub-par rating based on this information.

46.     The Guide rated Ariix Optimal at 3.5 stars. After public criticism and incontrovertible evidence that Ariix was a top-quality product, Ariix's rating was revised to five stars.

47.     With a five-star rating, Ariix became eligible for the Gold Medal of Achievement—the same as Usana. The Gold Medal of Achievement is an important marketing tool. Ariix's sales representatives understand that Gold Medal status is fundamentally important to their sales strategy, particularly because Ariix's fiercest competitor, Usana, markets its products as Gold Medal certified. Sales representatives lose sales to competing products if they are not listed as Gold Medal certified.

48.     As the Guide explains:

Gold Medal of Achievement winners have invested significant time, resources, and money to ensure their products are manufactured to the highest standards possible . . . .

Deservedly so, NutriSearch recognizes these companies and their products as the *Best of the Best*. Graphs of each company's highest-scoring product are included [in the guide].

Lyle MacWilliam, *The NutriSearch Comparative Guide to Nutritional Supplements*, 78 (5th Prof. ed. 2014).

49.     Ariix spent two years and several hundred thousand dollars in an effort to obtain the Gold Medal of Achievement. If NutriSearch and MacWilliam were to contravene Usana's orders and give Ariix—Usana's chief rival—a Gold Medal of Achievement, they would breach their agreement with Usana and lose the Usana financial support on which their business depends. So they continuously changed the

certification requirements—requirements that appear to have applied only to Ariix—to provide false excuses not to certify Ariix.

50.     When Ariix first applied for Gold Medal status, the application was denied because Ariix (admittedly) misunderstood the requirements of its submission.

51.     Ariix quickly submitted a corrected application, but the application was again denied, with NutriSearch claiming that, as a result of an NBC Dateline expose on the issue of "dry-labbing" at ISO-certified laboratories, it would no longer accept ISO-17025-certified laboratory reports and certifications.

52.     NutriSearch also specifically acknowledged that "this disclosure was not in any way a reflection on ARIIX" or its submission. But this policy did not apply to previous submissions, including those by Usana—nor did it ever disclose it publicly in later editions of the book or advertisements, or otherwise issue any kind of statement. Instead, NutriSearch purported to apply this secret new policy ***only*** on a going-forward basis—thus exempting Usana, which had relied on ISO-17025-certified labs. So—unknown to the Guide's readers—NutriSearch held Usana to a lower standard than Ariix.

53.     Given this second rejection, Ariix undertook an expensive new full analysis of its formulation through one of two NutriSearch-approved laboratories, NSF. Because of these new requirements, NSF did not even have the analytical procedures necessary to verify certain nutrients.

54.     Nevertheless, as NutriSearch later acknowledged, Ariix "diligently worked with NSF scientists to develop" these protocols and procedures and that

Ariix's "pioneering" work would "'up the game' for all future contenders of the NutriSearch GOLD Medal."

55.     NutriSearch thanked Ariix for "pioneering new ground" by developing new testing protocols with NSF and achieving certification (pending final laboratory reports). But it stated that "[t]here is unlikely to be a new edition of the Professional guide for some time, as the 5th edition is not long out of the box; however, as previously mentioned, we can insert your NutriSearch GOLD Medal of Achievement into future printings of the existing guide once current stock has been depleted."

56.     After going to great lengths to complete this new, in-depth analysis, Ariix submitted its final full NSF laboratory reports. But within weeks, Ariix was again denied the Gold Medal that NutriSearch had admitted Ariix had earned and which Ariix had even set a new standard for attaining. NutriSearch did not report any problems or concerns with Ariix's final NSF laboratory reports.

57.     NutriSearch instead claimed that because of the dry-labbing allegations that it had known of for nearly a year, "it came to the difficult decision to suspend any further revisions of the 5th edition of the guide" to create a 6th edition because it "could no longer confidently assure the consumer that ***what is on the label is what is in the bottle***" (emphasis added). NutriSearch did not, however, publicly question or disclose its own reservations about the validity of the information in its current publications. Indeed, it continued to market them, and affirmatively made statements that contradicted such a concern (e.g., MacWilliam's Dr. Oz Show appearance).

58.     Interestingly, Ariix was the ***only*** qualified recipient of the Gold Medal of Achievement that had at any point submitted 100% of its laboratory certifications from a non-ISO-17025 laboratory; it was also the ***only*** qualified recipient to submit full labs exclusively from a NutriSearch-approved laboratory.

59.     NutriSearch gave no timeline for these revisions and stated that it intended to grandfather its current recipients, including Usana, at least until it could publish the next edition.

60.     Thereafter, NutriSearch's responsiveness to Ariix's inquiries became sporadic and eventually stopped. NutriSearch did not notify Ariix when it finalized its new criteria or when it began accepting applications for the 6th edition. The 6th edition has since been published, and does not include Ariix as a Medal of Achievement recipient. In effect, Ariix was frozen out of its certification process, which misleads consumers to believe that Ariix—unlike Usana—either is not willing to "go the extra mile to demonstrate the quality of [its] product" or because it failed GMP certification or voluntary product testing.

### Exclusive Promotion of Usana

61.     MacWilliam has long been a keynote speaker at Usana sales representative events. Given the importance of the guide in the direct sales supplement industry and the fierce competition between Ariix and Usana, Ariix intimated a desire and eventually made an offer to MacWilliam to speak at one of its conventions.

62.    Yet MacWilliam declined a speaking engagement with Ariix, stating he would not be taking any more speaking engagements and citing his changing priorities and desire to be at home with his family. But MacWilliam continued to take paid speaking engagements with Usana regularly.

63.    Ariix questioned MacWilliam's apparent exclusive relationship with Usana more than once. After MacWilliam had told Ariix that he was "retiring" from speaking, NutriSearch CEO Gies deflected by explaining that the speaking engagement had occurred some time ago, assuring Ariix that MacWilliam was not playing favorites in choosing speaking engagements.

64.    But MacWilliam continued to consistently take paid speaking engagements with Usana. When confronted, MacWilliam admitted "They [Usana] will cut me off the second I do this [speak for Ariix]" and that it would be catastrophic because, between Usana's direct cash support and book sales to Usana distributors, Usana represents "the bulk of my [MacWilliam's] income." This direct financial incentive is exactly why Ariix was ultimately not certified as a Gold Medal recipient: Usana had repeatedly instructed NutriSearch and MacWilliam that they could not allow any other supplement company to achieve the same rating as Usana or Usana would stop paying them. Usana would not allow its fiercest and most direct competitor to obtain the same rating as Usana.

65.     MacWilliam also appeared as a guest on the Dr. Oz Show to promote the guide and Usana.[3] During that period, the Dr. Oz Show averaged a 1.4 Nielsen household rating, or about 1.6 million viewers nationwide each day it was aired. The clip is also available on YouTube, where it has 18,000 views, and is featured on the homepage of NutriSearch's website.

66.     Usana is a "Trusted Partner and Sponsor" of the Dr. Oz Show,[4] and that sponsorship led to MacWilliam's guest appearance. Usana wanted MacWilliam to hype Usana as the best supplement company on Earth.

67.     During the appearance, MacWilliam first advertised the Guide and the unbiased, evidence-based, scientific approach as explained above. But he ended his segment with a plug for Usana, prompted by Dr. Oz asking, "Who did the best?":

> Well there are some good companies out there. Oh, and one of the companies, I think it's a trusted partner with your show, Usana Health Sciences. Outstanding products and this company manufactures to pharmaceutical standards as a matter of fact. Usana Health Sciences is even registered with the FDA, the Food and Drug Administration, as a pharmaceutical manufacturer. They've always, ever since we've done the guide, scored in our top five-star products. But, they've also demonstrated by going that extra mile and showing that their manufacturing practices are at pharmaceutical standards and also by taking their products and running it through independent analysis. These products are excellent products, and the company has done an outstanding job with it. What I like about the company as well is the commitment, it's a company that doesn't run with the market hype. It runs with the science. And if the company is putting the science first, I've got a lot of confidence that the product is exceptional.

---

3.     The Dr. Oz Show, *Your Guide to the Best Vitamins and Supplements* (Feb. 2, 2016), https://www.youtube.com/watch?v=BSSJxAanXHQ&feature=youtu.be

4.     https://ir.usana.com/news-events/press-releases/detail/529/usana-sponsored-the-dr-oz-show-now-officially-distributed

68.     MacWilliam made these statements promoting the 5th edition of the guide (and Usana) after the dry-labbing allegations, after NutriSearch had grandfathered Usana's Gold Medal certification, and after he privately told Ariix he "could no longer confidently assure the consumer that what is on the label is in the bottle" from the testing used for Usana's certification. He did not disclose that:

a.     Usana pays him and NutriSearch hundreds of thousands of dollars per year, promotes the guide, exercised control over its content, and provides other benefits;

b.     Dry-labbing had been exposed, that he had concerns about it, or that Usana's certification came from a lab accused of "dry-labbing";

c.     Ariix was the first and only company to set a "new, higher bar" for certification, but had not been awarded the Gold Medal of Achievement; and

d.      His appearance on the show was orchestrated by Usana (in fact, he leads the audience to believe that Usana's sponsorship of the show is coincidental).

### Other Promotional Statements

69.     MacWilliam and NutriSearch also make the same and similar promotional statements about the Guide and about Usana products in other media.

70.     Many of the relevant statements in the Guide are reproduced on Amazon.com as product descriptions, additional information, and the "Look Inside"

feature. For example, one Amazon product page for the guide states that "over 1,500 U.S. and Canadian supplements are scientifically rated and compared, [and] the 18 critical Health Support Criteria required to evaluate the supplements are fully explained" in the product description. It reiterates that it uses "a scientifically-based approach . . . representing thousands of hours of research" and that Medals of Achievement are based on "proof of manufacturing and product quality, including independent laboratory analysis [that assures] what is on the label is really in the bottle" in the "From the Inside Flap" excerpt. It also makes the neutrality disclaimer described in paragraph 11 as one of the first pages viewable through the "Look Inside" feature designed to entice purchases of the book.

71.    Usana and its representatives used NutriSearch and MacWilliam's trademarks, copyrighted material, and likenesses for promotional purposes on websites and social media. In some cases, MacWilliam's quotes were intended as promotional product endorsements. For example, on one Usana Facebook page, the featured photo is a professionally designed composite photo of MacWilliam, the Guide, and his quote:

USANA's® New CellSentials™ with InCelligence™ technology is a real game changer that raises the bar for the industry. That's why I have full confidence that USANA will once again stand out as an industry leader and will continue to receive an elite standing in the new Comparative Guide.



72.     Each time Usana is awarded with a Medal of Achievement, the Editor's Choice award, or other accolades from NutriSearch, Usana issues a press release for worldwide distribution that quotes the guide. For example, Usana quoted the Guide's purported objective, unbiased, scientific criteria for its rating and Gold Medal certification in its press release announcing its third consecutive Gold Medal award. They intended for their statements to be used promotionally in this way.

73.     The Ninth Circuit articulated the concerns with such conduct:

Today, consumers face waves of advertisements amid a sea of product choices. To navigate the seemingly unending stream of advertisements, consumers often depend on independent reviews for candid and accurate assessments. But when someone falsely claims to be independent, rigs the ratings in exchange for compensation, and then profits from that perceived objectivity, that speaker has drowned the public trust for economic gain.

*Ariix*, 985 F.3d at 1118–19.

## COUNT I
## THE LANHAM ACT, 15 U.S.C. § 1125(a)
### False Advertising or Promotion

74.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

75.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— . . .

> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

76.    Defendant Usana made, caused to be made, and used false or misleading descriptions or representations of fact in each of its consumer and professional edition guides, in Amazon book descriptions, advertisements on the NutriSearch website, advertisements on Usana-affiliated Facebook pages, during Usana sales calls, and a promotion on the Dr. Oz Show.

77.    The statements that neither NutriSearch nor the author of the Guide "is associated with any manufacturer or product represented in this guide" are literally false:

> a. MacWilliam has a long-running association with Usana as
>
> a keynote speaker at its conferences, and his continued income

stream and other benefits are conditioned on ensuring that Usana remains the top-rated supplement company in the guide. This directly contradicts the statements on the inside cover pages of NutriSearch's guides: NutriSearch's and MacWilliam's claims that they are independent and that the ratings and certifications are based on unbiased, objective, scientific criteria.

b. MacWilliam has turned down offers for speaking engagements with Ariix, citing personal reasons, while continuing to speak on behalf of Usana. This directly contradicts the statements on the inside cover pages of the Guide.

c. Both MacWilliam and Gies are former Usana commissioned sales representatives.

d. Usana has paid significant money and provided other benefits to NutriSearch and MacWilliam in exchange for ensuring that Usana is always the best-rated supplement company in the Guide.

e. Usana colluded with NutriSearch and MacWilliam before publication of a new edition of the Guide to coordinate changes in Usana's nutrient formulation with corresponding changes to the ratings criteria that ensure Usana remains the best-rated product.

f. Usana colluded with NutriSearch and MacWilliam before publication of a new edition of the Guide to coordinate the Guide's

informational content with Usana's updated marketing messages and label claims.

g. MacWilliam regularly promotes Usana on paid speaking tours, in authorized endorsements featured on the internet and social media, and even on a nationally broadcast TV show.

h. Usana, NutriSearch, and MacWilliam have a symbiotic relationship that is profitable for all three.

i. Usana directs the conduct of NutriSearch and MacWilliam, including possessing editorial control over the Guide's contents.

78. Usana also made, caused to be made, and used many misleading claims including, for example:

- **It is not a product endorsement.**

This is misleading because a substantial proportion of NutriSearch's revenue and MacWilliam's income comes from Usana sales representatives who purchase the Guide as a sales tool. MacWilliam originally created the Guide as a sales tool for Usana, for example. NutriSearch sells supplement companies on the marketing benefits of participating in its Guide, offering "licensing opportunities" to Medal of Achievement recipients. And MacWilliam has, in fact, endorsed Usana through those "licensing opportunities," on tour, and on TV.

- **It simply documents recent findings in the scientific literature.**

This is misleading because Usana colludes with NutriSearch as described in paragraphs 19–37.

- **Over 1,500 U.S. and Canadian supplements were scientifically rated and compared**.

This is misleading because Usana and NutriSearch rigs the ratings to ensure Usana is always the best-rated company.

28

- **The guide is an "independent publication."**

This is misleading because Usana has a long-running, direct financial relationship with NutriSearch, as described throughout this complaint, including Usana's influence and control over content, publication, and dissemination.

- **Suggestions of neutral evaluation for Gold Medal of Achievement awards based on "independent laboratory testing" using a "higher standard of evidence" provide "assurance to the consumer."**

This is misleading because the certifications are based on ever-changing criteria designed to ensure that Usana remains the best-rated supplement company rather than any scientific process. It is also misleading because Usana was grandfathered and exempted it from obtaining new laboratory certifications, while applying a different standard to deny Ariix the certification. Finally, it is misleading because it suggests that Ariix products are inferior to Usana's products, have not undergone such rigorous testing, or have failed rigorous testing, when in private, NutriSearch acknowledged that Ariix had met a higher standard.

- **"[O]nly four manufacturers have completed the necessary steps to earn a Gold Medal of Achievement."**

This is misleading because Ariix not only completed the necessary steps, it jumped through additional hoops and "set a new, higher bar" for the Gold Medal of Achievement, yet it has not been awarded the certification.

- **Statements that the NutriSearch five-star rating system is based on 18 objective scientific criteria and that it is used for the specific purpose of eliminating bias**

This is misleading because Usana regularly directs NutriSearch to change its criteria to ensure that Usana remains the top-rated supplement company.

- **Other context suggesting the Guide is neutral and objective in its ratings of various supplement products is false and misleading.**

29

79. The misstatements contain objective claims about the neutrality of NutriSearch and MacWilliam (rather than subjective opinion or puffery) designed to promote Usana's products:

    a. Touting the objectivity of the rating system to more than a million potential consumers, MacWilliam explained that the five-star rating system is based on 18 objective scientific criteria and that it is used for that specific purpose of attaining objectivity: "we didn't want to put our particular bias into it." *See* ¶13.

    b. NutriSearch and MacWilliam have also explained that the Gold Medal is not a subjective certification: any company that obtains a five-star rating (touted as scientifically objective, as explained above) can obtain Gold Medal certification by (1) obtaining a pharmaceutical good manufacturing practices certification from NSF or USP and (2) obtaining lab certification that "what's on the label is actually in the bottle." *See* ¶16.

    c. The disclaimer of any ties to a company reviewed by the guide are false. NutriSearch and MacWilliam have a direct and indirect financial relationship with Usana, and Usana exercises influence and control over NutriSearch, MacWilliam, and the contents of the Guide.

d.     NutriSearch made the statements intending to cause consumers to rely on them and make purchasing decisions of products based on their belief that the ratings and awards in the Guide are the work of independent experts.

e.     Usana has consistently publicized NutriSearch and MacWilliam's independence in its own marketing materials. For example, in a press release that has now been scrubbed from Usana's website, Usana touted that it "Is also being recognized by independent third-party establishments. Just recently, the company achieved a five-star rating from NutriSearch—an independent research house that specializes in the comparative valuation of nutritional products . . . ."

80.    These misstatements were made and used in connection with and to influence consumer decisions to purchase, goods and services offered by Usana, all of which are in interstate commerce.

a.     The Guide is marketed and sold throughout the United States and around the world.

b.     The Guide is designed to be used as a sales and marketing tool for nutrition sales representatives generally, and Usana sales representatives specifically.

c.     Usana sales representatives comprise nearly all purchasers of the Guide.

    d.    Usana and Ariix both sell their supplement products throughout the United States through independent sales representatives.

    e.    MacWilliam promoted the Guide and Usana on a nationally aired episode of the Dr. Oz Show; as part of the promotion, NutriSearch and the Dr. Oz Show offered viewers a chance to win one of 1,000 copies of the Guide.

    f.    The Guide is available on Amazon.com, and many statements are included in product descriptions.

81.    Usana is a direct commercial competitor of Ariix, and it has caused harm by conspiring with NutriSearch and MacWilliam to deceive sales representatives and end consumers in a way that causes them to withhold trade from Ariix and to instead trade with Usana.

82.    The misstatements directly reduced Ariix's revenues by causing both consumers and professionals to select Usana over Ariix. Indeed, Usana profited by fixing the rankings and awards in its favor.

83.    Usana and its co-conspirators made these statements to influence consumers in three distinct ways:

    a.    they intended to influence consumers to buy their products, given that the overwhelming majority of book sales were to Usana distributors who were instructed by Usana to use the Guide as a marketing tool;

b.   they intended to influence consumers to buy Usana's products, because NutriSearch and MacWilliam were acting as agents of Usana and because they had a vested interest in the sales of Usana's products;

c.   they intended to influence consumers to not buy Ariix' products—to "withhold trade from plaintiff," *Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014)—because of that same agency relationship and vested interest in Usana product sales.

84.   The challenged statements are not consumer reviews; they are promotional material bought and paid for by Usana, coordinated before publication and aided and abetted by Usana. *See* ¶¶0–36. And the Guide purports to rate products based on scientific, objective ratings criteria rather than subjective opinion- or experience-based criteria.

85.   Indeed, that is what makes these false and misleading statements so damaging to Ariix: because consumers believe that the Guide rates products based on objective, scientific criteria and has no connection with any company whose products are rated, consumers make purchasing decisions of nutrition supplements based on these ratings and certifications.

86.   The same is true for the Medal of Achievement certification: consumers believe these statements that the Medal of Achievement is available to any five-star recipient who "goes the extra mile" to obtain independent GMP certification and a lab verification that the label accurately reflects what is in the bottle. It is described as a

binary determination: either a company obtains GMP certification and laboratory verification of the label claims, or it does not. A five-star rated company that does not obtain a Medal of Achievement is thus, from the consumer's viewpoint, either unwilling to "go the extra mile" and provide consumer assurance—or it cannot do so because it does not manufacture to pharmaceutical standards or its labels do not accurately reflect what is in the bottle.

87.     The statements constitute a commercial advertising or promotion because:

    a.     They were designed to promote the goods and services of Usana and to demote the goods of Ariix.

    b.     They propose commercial transactions, including, but not limited to, the purchase of the guide itself, purchases of periodic updates to the Guide, and the purchase of "top-rated" products featured in the Guide — Usana's products.

    c.     They are intended to be used as promotional material for Usana representatives who propose commercial transactions. MacWilliam specifically created NutriSearch for that purpose, and when Usana realized the Guide's potential, it expanded the program to all Usana sales associates. Usana now pays MacWilliam to directly to promote Usana as the best-rated supplement company—in the Guide, in promotional material, and in live and televised appearances.

      d.     Usana and its co-conspirators were motivated by their own economic interests.

      e.     The statements are sufficiently disseminated to the relevant purchasing public and, in fact, target said purchasing public (as explained in paragraphs 79–80).

      f.     The statements are in a "traditional advertising format" in that publishers expect purchasers of books to read the statements prior to purchase, which are contained in the inside covers of the book. For example, prospective purchasers will peruse the book, especially the inside cover and first couple of pages, before deciding to purchase. These books are available to purchase at certain conferences, for example, where consumers can review them before buying. Additionally, Usana has touted its ratings and awards in press releases that describe NutriSearch and MacWilliam as independent.

      g.     Each book is an advertisement for readers to purchase future versions of the book. Each edition discusses the importance of new scientific breakthroughs and highlights purportedly innovative new research, suggesting the reader should make sure to pick up each new edition.

      h.     Usana intends its Medal of Achievement awards to be used for promotional purposes.

88.    The statements of scientific objectivity and neutrality have been sufficiently disseminated to the relevant purchasing public:

a. They are contained as promotional material on the inside cover of the books themselves.

b. They are repeated by Usana, NutriSearch, and MacWilliam at Usana sales conferences, speeches, and summits as a selling point: you can sell more Usana products by showing your prospective customers this Guide, who will believe them to be objective, scientific fact.

c. They are made on bookseller websites, such as Amazon.com, and NutriSearch's public website. *See* ¶¶14, 70.

d. MacWilliam made similar scientific objectivity and neutrality statements as a guest on the Dr. Oz Show, which had an average daily viewer rating of about 1.6 million viewers. 18,000 people have also viewed the YouTube clip on Dr. Oz's official YouTube channel, and the clip is also featured on the homepage of NutriSearch's website. The Dr. Oz Show is sponsored by Usana, and Usana arranged for MacWilliam to appear on the show.

e. They are quoted, summarized, and repeated by Usana in press releases with worldwide distribution and marketing materials.

89. The misleading promotions of Usana and corollary misleading statements and omissions about Ariix's ratings and quality have also been sufficiently disseminated to the relevant purchasing public:

a.   They are contained in the falsified ratings and certifications for Usana and Ariix within the books themselves.

b.   They are repeated by Usana, NutriSearch, and MacWilliam at Usana sales conferences, summits, and events to drum up enthusiasm for Usana and the guide's potential to help sell products.

c.   They were made during MacWilliam's appearance on the Dr. Oz Show, which is sponsored by Usana, a clip of which is available on YouTube and featured on the homepage of NutriSearch's website.

d.   They are repeated by the tens of thousands of Usana sales representatives who are trained by Usana to use the Guide as a marketing tool to sell supplements to consumers.

e.   Usana boasts its top rating and other achievements in its marketing materials and press releases.

90.   Consumers are likely to be, and actually have been, deceived by the statements made, caused to be made, and used by Usana in two ways: first, consumers decided to purchase guides because of the statements; and second, consumers (which includes end-consumers and supplement sales representatives) made supplement purchasing decisions because of the statements. The professional edition is specifically designed for and marketed to tens of thousands of Usana sales

representatives, who are told that referring prospective customers to the guide is one of the most effective ways to sell Usana products.

91.     The statements relate to descriptions or representations of fact that misrepresent the nature, characteristics, and quality of Usana and its products. The statements also relate to descriptions or representations of fact that misrepresent the nature, characteristics, and quality of Ariix and its services, as well as the nature, characteristics, and quality of its primary competitor, Usana.

## REQUEST FOR RELIEF

**WHEREFORE**, Ariix requests that this Court:

A.     Declare that Usana's conduct violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

B.     Enter judgment against Usana;

C.     Award Ariix compensatory damages;

D.     Award Ariix pre- and post-judgment interest at the applicable rates on all amounts awarded;

E.     Award Ariix its costs and expenses of this action, including its reasonable attorneys' fees necessarily incurred in bringing and pressing this case, as provided in 15 U.S.C. § 1117(a);

F.     Grant permanent injunctive relief to prevent the recurrence of the violations for which redress is sought in this complaint; and

G.     Order any other such relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims.


Dated: May 6, 2022                          PRICE PARKINSON & KERR, PLLC


                                            */s/ Jason Kerr*
                                            _____

                                            Jason Kerr
                                            Utah Bar No. 8222
                                            jasonkerr@ppktrial.com
                                            5742 W. Harold Gatty Dr., Suite 101
                                            Salt Lake City, UT 84116

                                            *Local Counsel for Plaintiff*

                                            BONA LAW PC
                                            Aaron Gott
                                            aaron.gott@bonalawpc.com
                                            Luke Hasskamp
                                            luke.hasskamp@bonalawpc.com
                                            4275 Executive Square, Suite 200
                                            La Jolla, CA 92037

                                            *Counsel for Plaintiff*